USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/22/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| J.L., | |
| | Petitioner, |
| | -against- |
| THOMAS DECKER, et al., | |
| | Respondents. |

1:22-cv-2853-MKV

ORDER

MARY KAY VYSKOCIL, United States District Judge:

Petitioner is a Guatemalan citizen who entered the U.S. illegally and was arrested by U.S. Immigration and Customs Enforcement ("ICE") after pleading guilty to attempted rape.[1]  He has filed a petition for a writ of habeus corpus pursuant to 28 U.S.C. § 2241, claiming that his prolonged detention without a bond hearing violates the Fifth Amendment Due Process Clause and seeks immediate release or, in the alternative, a bond hearing.  At the time he filed his petition, Petitioner had been detained for eight months without a bond hearing pursuant to 8 U.S.C. § 1226(c), which provides mandatory detention for certain criminal noncitizens.

Shortly after Petitioner filed for habeas relief, however, the Board of Immigration Appeals ("BIA") dismissed an appeal of his removal order.  The BIA's dismissal made Petitioner's removal order administratively final, shifting the statutory provision governing Petitioner's detention from § 1226(c) to 8 U.S.C. § 1231.  Unless and until the Second Circuit issues a stay of Petitioner's removal, his detention will remain authorized under Section 1231(a).  Accordingly, the Court does not currently have the statutory authority to address the merits of the petition regarding detention under Section 1226(a), and the petition must be denied without prejudice.

---

[1] The Court previously permitted Petitioner to proceed in this action solely under his initials.  ECF No. 28.

Indeed, Petitioner has filed a motion requesting a stay of removal from the Second Circuit, and the Court recognizes the possibility that a stay may issue.  If a stay of removal does issue, the authority for Petitioner's detention would revert to Section 1226(a).  Thus, the Court does not find that the petition, which may raise a cognizable due process argument under Section 1226(c), is moot as the government argues.  Nevertheless, as of the date of this order, the Circuit has not stayed Petitioner's removal, and his detention remains governed by Section 1231(a).  As such, the habeus petition, which raises due process concerns under Section 1226(c) is denied.

## BACKGROUND[2]

### I.  Factual Background

Petitioner is a citizen of Guatemala who entered the United States without admission or parole in March of 2019.  Charles Decl. ¶¶ 3, 4.  Roughly two years later, Petitioner pled guilty to one count of attempted rape in the second degree.  Charles Decl. ¶ 7.  On August 10, 2021, Petitioner was sentenced to 364 days of imprisonment for the attempted rape conviction, and he was released from Rockland County Correctional Center later that day.  Pet. ¶ 19.

Upon his release, Petitioner was arrested by ICE and detained at the Orange County Jail in Goshen, New York.  Pet. ¶ 19.  ICE charged Petitioner as removable from the United States as a noncitizen present in the United States without admission or parole.  Pet. ¶ 19.  At the time, Petitioner was detained pursuant to 8 U.S.C. § 1226(a), which provides for discretionary detention of noncitizens during the pendency of removal proceedings.  Pet. ¶ 19.

On September 14, 2021, Petitioner admitted to the removal allegations and conceded the

---

[2] The opinion draws on facts alleged in the Petition for Writ of Habeas Corpus [ECF No. 1] ("Pet."); the Declaration of Hannah Walsh [ECF No. 1 Ex. 3] ("Walsh Decl."); and the Declaration of Michael V. Charles [ECF No. 17] ("Charles Decl.").  The Court refers to the parties' briefing as follows: Respondents' Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus as "Gov't Br." [ECF No. 16]; and Petitioner's Reply in Support of the Petition for Habeas Corpus as "Reply" [ECF No. 26].

charge of removability.  Pet. ¶ 20.  Petitioner also filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  Pet. ¶ 20.  A week later, an additional charge of removability was filed against Petitioner, alleging that his attempted rape conviction was a crime involving moral turpitude.  Pet ¶ 21.  As a result of this additional charge, Petitioner's custody changed from discretionary under 8 U.S.C. § 1226(a) to mandatory under 8 U.S.C. § 1226(c).  Pet. ¶ 21.

Petitioner challenged this new charge by filing a motion for a *Joseph* hearing, which allows a person detained under Section 1226(c) to contest his custody status by arguing that his conviction was not a crime involving moral turpitude.  Pet. ¶ 22; *see Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999).  At the *Joseph* hearing, the immigration judge determined that Petitioner's conviction for attempted rape in the second degree was a conviction for a crime involving moral turpitude, and that his mandatory detention was therefore proper.  Charles Decl. ¶ 17.  That same day, the immigration judge also denied Petitioner's other applications for relief, including his claims for withholding of removal and CAT relief and ordered him removed to Guatemala.  Charles Decl. ¶ 17.  Petitioner appealed both decisions to the Board of Immigration Appeals ("BIA"), which dismissed the custody appeal (*i.e.*, the appeal of from the *Joseph* hearing) on March 30, 2022, while the removability appeal remained pending.  Pet. ¶ 29.

On April 7, 2022, Petitioner filed a habeas petition under 28 U.S.C. § 2241, claiming that his prolonged detention violates the Fifth Amendment Due Process Clause and seeking his immediate release or a bond hearing.  Pet. ¶ 70.

On April 20, 2022, the BIA dismissed Petitioner's appeal of the immigration judge's removal order.  Charles Decl. ¶ 22.  Following the BIA's dismissal, Petitioner filed a petition for review and a motion for stay of removal in the Second Circuit.  Charles Decl. ¶ 22.  Both remain

pending.  Pursuant to the government's policy of forbearance, Petitioner will not be removed while the petition for review and motion to stay removal are pending before the Second Circuit.  *See In re Immigration Petitioners for Review Pending in the U.S. Court of Appeals for the Second Circuit*, 702 F.3d 160, 162 (2d Cir. 2012) ("the Forbearance Policy").

## LEGAL STANDARDS

The general federal habeas corpus statute, set forth at 28 U.S.C. § 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  "Under this provision, federal courts are empowered to hear claims by non-citizens challenging the constitutionality of their detention."  *Reid v. Decker*, No. 19 Civ. 8393, 2020 WL 996604, at *5 (S.D.N.Y. Mar. 2, 2020) (citing *Demore v. Kim*, 538 U.S. 510, 516-17 (2003)).

## DISCUSSION

Petitioner argues that his prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment and that, as a result, the Court must order his immediate release or, in the alternative, a bond hearing at which the government bears the burden of proving by clear and convincing evidence that he presents an unjustifiable risk of flight or danger to the community.  The government disputes that the duration of Petitioner's detention without a bond hearing amounts to a constitutional violation, and further disputes that it would have to carry the burden of proof were a bond hearing to be ordered.

The Court cannot not resolve these disputes, however, because this case turns on a threshold issue regarding which statutory provision governs the petition.  Petitioner argues that he is detained pursuant 8 U.S.C. § 1226(c), which governs the detention of "criminal aliens," and which formed the basis of his habeas petition.  The government argues that by reason of the BIA's

dismissal of the appeal from the removal order, Petitioner is currently detained pursuant to 8 U.S.C. § 1231, which governs the "[d]etention, release, and removal of aliens ordered removed."  The question of whether Petitioner is detained under Section 1226 or Section 1231 is imperative, because unlike Section 1226, Section 1231 does not have the same provisions regarding the necessity of a bond hearing.  *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 574 (2022).[3]

The critical issue in determining which Section governs Petitioner's detention is whether the "removal" period—which triggers the application of Section 1231—has begun.  The Court's analysis of this issue begins, as it must, with the statutory language.  *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.").  As previously noted, Section 1226 applies to noncitizens arrested and "detained *pending a decision*" on removal.  8 U.S.C. § 1226(a).  In contrast, Section 1231(a) governs detention of those noncitizens already "ordered removed" and who have therefore entered what the statute designates as the "removal period."  8 U.S.C. § 1231(a)(1)(A).  Section 1231 directs that, with certain exceptions, the removal period is "a period of 90 days" during which "the Attorney General shall remove the alien from the United States."  *Id*.  The statute provides that the removal period starts on the *latest* of three events:

(i)     The date the order of removal becomes administratively final;

(ii)    If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order;

---

[3] Noncitizens detained under § 1226(a) have long received bond hearings at the outset of detention.  *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 574 (2022).  However, the Supreme Court has expressly held that while the Government possesses **discretion** to provide bond hearings under § 1231(a)(6), the statutory text does not require it.  *Id*. at 581 ("[A]ssuming without deciding that an express statutory reference to "bond" (as in § 1226(a)) might be read to require an initial bond hearing, § 1231(a)(6) contains no such reference.").  In other words, the government does indeed have the authority to grant Petitioner—who has been detained for 2 years and 5 months—over 29 months—a bond hearing, but apparently chooses not to do so, notwithstanding the length of Petitioner's detention.

(iii)     If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).  During this 90-day period, the noncitizen "must be detained," but "[a]fter that time elapses" the statute "provides only that certain [noncitizens] 'may be detained' while efforts to complete removal continue." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018); *see* 8 U.S.C. §§ 1231(a)(2), (a)(6).[4]

"The text of Section 1231(a) is clear." *Moscoso v. Joyce*, No. 22-CV-6272 (PKC), 2023 WL 2016371, at *3 (S.D.N.Y. Feb. 15, 2023).  The removal period begins, and therefore a noncitizen is detained *under Section 1231*, when the order of removal is administratively final. *Id.* The order becomes "administratively final" once it is affirmed by the BIA. *Id.*  Here, it is undisputed that the first event triggering Section 1231 has occurred because the immigration judge's order of removal became administratively final when the BIA dismissed Petitioner's appeal on April 2, 2022.  *See* 8 C.F.R. §§ 241.1, 1241.1(a) (an order of removal becomes final and triggers the removal period "[u]pon dismissal of an appeal by the Board of Immigration Appeals").[5]

The only relevant exception once the order of removal becomes "administratively final" is pursuant to Section 1231(a)(1)(B)(ii) where there is a petition for review of the removal order and the appellate court "orders a stay of the removal." *Moscoso*, 2023 WL 2016371, at *3.  In that circumstance, the removal period *ceases* when the stay is ordered and *re*-commences upon a final order from the reviewing court (here, the Second Circuit).  *Id.*  Prior to this *final* order, the

---

[4] In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court determined that Section 1231(a) authorizes detention of noncitizens beyond the 90-day removal period for a period that is "reasonably necessary" to accomplish the noncitizen's removal. *Id.* at 699-700.

[5] There is also no dispute that the third event contained in Section 1231(a)(1)(B)(iii) has *not* occurred since Petitioner is detained under an immigration process.

noncitizen remains "detained pending a decision" on removal and is held under Section 1226(a), not Section 1231.  "Where a stay is granted, a detainee may enter the removal period more than once—when the BIA affirms and then later when the Circuit affirms—with the statutory authority governing his detention likewise shifting." *Id*.

Petitioner's order of removal is undisputedly administratively final.  Charles Decl. ¶ 22. The only dispute concerns the potential second triggering event under § 1231(a)(1)(B)(ii). Petitioner argues that the Court should find that the stay requirement of this triggering event has been satisfied by the operation of the government's "Forbearance Policy."  Under this policy, the DOJ and DHS have made a "voluntary decision" that noncitizens with a petition for review and a motion for stay of removal pending before the Second Circuit will not be removed.  As this policy is a bar to Petitioner's removal, he argues that the Forbearance Policy, in function, amounts to a stay.  Thus, Petitioner claims, the second triggering event in Section 1231(a)(1)(B)(ii) has occurred, and as such, the statutory authority for his detention is shifted back to Section 1226(a), pending a final order by the Second Circuit.  Petitioner urges that "the removal period [will] re-commence[] upon a *final* order from the reviewing court."  *Moscoso*, 2023 WL 2016371, at *3. He urges that prior to this final order by the Second Circuit, he remains "detained pending a decision" on removal and is therefore held under Section 1226(a). *Id*.  The government argues, by contrast, that the second triggering event under § 1231(a)(1)(B)(ii) event has not occurred because the Second Circuit has not ordered a stay of removal, and therefore, since the BIA order is final, Petitioner is held under Section 1231(b)(i).

The dispositive question is whether the Forbearance Policy "in function" amounts to a stay of removal, such that Petitioner is held under Section 1226(a)—rather than Section 1231—while Petitioner's appeal and stay motion are pending in the Second Circuit.  Courts within this Circuit

are divided on this question, as noted in the margin.[6]  Some courts have held that only a court ordered stay can toll a removal period and, thus, Section 1231 continues to govern a petitioner's detention even when a policy of forbearance is in place.  *See e.g.*, *Moscoso v. Joyce*, No. 22-CV-6272 (PKC), 2023 WL 2016371, at *3 (S.D.N.Y. Feb. 15, 2023); *Narain v. Searls*, No. 19-CV-6361 (CJS), 2020 WL 95425, at *4 (W.D.N.Y. Jan. 8, 2020).  Other courts have held that the government's policy of forbearance is functionally equivalent to a court ordered stay and that, as a result, Section 1226 governs whenever that policy prevents removal even if an appeal is pending. *See e.g.*, *Rodriguez Sanchez v. Decker*, 431 F. Supp. 3d 310, 315 (S.D.N.Y. 2019).

In resolving this motion, the Court relies on the unambiguous language in the statute. Specifically, the Section 1231 expressly states that the second event that can trigger the beginning of the removal period has two preconditions: (1) "the removal order is *judicially* reviewed," and (2) "a *court* orders *a stay* of the removal of the alien."  8 U.S.C. § 1231(a)(1)(B)(ii) (emphasis added).  For the first condition, use of the past tense "reviewed" signals that court review already must have occurred, not that it is merely pending.  *See State v. Dep't of Justice*, 951 F.3d 84, 118 (2d Cir. 2020) ("[U]se of the past tense in the quoted text signals that [the condition] must have occurred.").  With respect to the second condition, the clear statutory language is that the removal of the alien must *be stayed by* "*a court order*[]," not a voluntary government policy.  Here, neither condition has been satisfied: the Second Circuit has neither reviewed the removal order nor has it

---

[6] *Compare Argueta Anariba v. Shanahan*, 190 F. Supp. 3d 344, 350 (S.D.N.Y. 2016) (Forrest, J.) (adopting position of other courts that "under the circumstances created by the forbearance policy, moving for a stay prevents the start of the removal period as if a Court had issued a stay of removal pending judicial review" (internal quotation marks omitted)); *Rodriguez Sanchez v. Decker*, 431 F. Supp. 3d 310, 313-15 (S.D.N.Y. 2019) (Nathan, J.) ("[B]ecause [petitioner's] removal is neither imminent nor certain so long as his petition for review is pending in the Second Circuit and the forbearance policy remains in effect, his detention is governed by § 1226, not § 1231."), *with Brathwaite v. Barr*, 475 F. Supp. 3d 179, 187 (W.D.N.Y. 2020) (Sinatra, J.) ("The ordinary meaning of this statutory, court-ordered stay provision requires that a court actually order a stay of removal."); *Narain v. Searls*, No. 19 Civ. 6361, 2020 WL 95425, at *4-5 (W.D.N.Y. Jan. 8, 2020) (Siragusa, J.) ("With due respect, this Court disagrees with the courts of this district that have found the DHS-Second Circuit agreement to be equivalent to a court-ordered stay.").

issued a stay.  The removal period thus began—and the statutory provision governing detention shifted to Section 1231—when the order of removal became administratively final on April 20, 2022.[7]

This outcome aligns with the reasoning in *Hechavarria v. Sessions*, 891 F.3d 49 (2d Cir. 2018).  In that case, the Second Circuit considered which detention provision governed where a noncitizen subject to a final removal order filed a petition for review and the Second Circuit formally granted the noncitizen's motion to stay removal during the pendency of that review. *Hechavarria*, 891 F.3d at 51.  After setting out the three events that can trigger the start of the removal period, the court explained that "[t]he second scenario is the one that applies to immigrants like Hechavarria who have filed petitions for review with a court of appeals *and received a stay*." *Id.* at 55 (emphasis added).  Because the removal period is not triggered under that scenario until "the date of the court's final order," which had not yet been issued in that case, the Second Circuit held that "[t]he unambiguous language of the statute makes plain that Hechavarria cannot be detained pursuant to Section 1231."  *Id.*[8]  The statutory language thus governed the result, as it must here, too.  The here difference is that Petitioner has not "*received a stay*," *id.*, and therefore, the second event, unlike in *Hechavarria*, has not yet occurred, thereby leaving the BIA final order in place and implicating Section 1231.

Other courts within this Circuit have read *Hechavarria* to reach a different conclusion. Eliding the emphasis that the Circuit in *Hechavarria* placed on the unambiguous statutory language, many courts have focused instead on the Second Circuit's statement that its "reading of

---

[7] Petitioner's detention may once again be governed by 8 U.S.C. § 1226(c), if and when the Second Circuit grant his motion for a stay of removal.  Gov't Br. at 18 n.10.

[8] The Second Circuit expressly noted that it was not deciding "the contours of judicial review during detention pursuant to the government's forbearance policy in this circuit."  *Hechavarria*, 891 F.3d at 54 n.3.

Section 1231 is confirmed by [the statute's] structure and logic" because "[g]enerally speaking, Section 1231 assumes that the immigrant's removal is both imminent and certain." *Id.* at 55-56. Specifically, certain courts have held that "because [the petitioner's] removal is neither imminent nor certain so long as his petition for review is pending in the Second Circuit and the forbearance policy remains in effect, his detention is governed by § 1226, not § 1231." *See, e.g.*, *Rodriguez Sanchez*, 431 F. Supp. 3d at 314.  In so finding, these courts have concluded that "the forbearance policy should be treated like a judicially-ordered stay of removal for purposes of § 1231." *Id.*

The Court does not agree that it is free to read such a gloss onto the clear language of the statute and treat the Forbearance Policy as the functional equivalent of the statutorily required judicial stay.  Absent a clear indication from the Second Circuit, the Court is not prepared to vary from the unambiguous language of the statute.[9] *See Yan Yang v. Barr*, 939 F.3d 57, 64-65 (2d Cir. 2019) ("Because we have carefully read the statutory text and find the meaning of the statutory language clear and unambiguous, we have no need to look further.  Our search for meaning thus begins and ends with the statutory language itself.").  The logic of a statute may be used to garnish already unambiguous language (as done in *Hechavarria*), but it cannot be used to subvert or supplant such language.[10]

The statute clearly provides that the second scenario for tolling the removal period can be triggered only by *a court ordered stay*, which, despite the similarities, is different from a

---

[9] The issue of whether the Forbearance Policy operating in this Circuit is a stay for the purposes of Section 1231(a) was framed in *Doe v. Decker*, 21 Civ. 5257 (LGS), 2021 WL 5112624 (S.D.N.Y. Nov. 3, 2021), *appeal docketed*, No. 22-489 (2d. Cir. Mar. 9, 2022).  The case has been briefed and argued to the Circuit.  It appears from the district court docket that the government subsequently granted Petitioner Doe a bond hearing pursuant to Judge Schofield's ruling that was appealed, but the Second Circuit docket does not reflect any disposition of Petitioner Doe's appeal.

[10] The rare exception to the rule is the canon against absurdity; but this canon applies "only where the result of applying the plain language would be, in a genuine sense, absurd, *i.e.*, where it is quite impossible that Congress could have intended the result and where the alleged absurdity is so clear as to be obvious to most anyone." *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 507-06 (2d Cir. 2019).  Petitioner has not contended that this canon applies here.

government policy of forbearance.  *See Moscoso*, 2023 WL 2016371, at \*3 ("The forbearance policy is *fundamentally different* from a stay and does not meet the statutory requirement of a court-ordered stay.") (emphasis added).  That distinction is unavoidable, and it is also decisive.

Because Petitioner's order of removal has become administratively final, and because the Second Circuit has not yet issued a stay, the Court concludes that the removal period has begun, and that Petitioner is detained pursuant to Section 1231.  The Court acknowledges that Petitioner has filed a motion requesting a stay of removal from the Second Circuit and recognizes that a stay may well issue.  If the Circuit ultimately does issue a stay, the authority for Petitioner's detention would shift back to Section 1226(a), while his appeal is pending.  If and when that time comes, Petitioner may very well have a meritorious grievance that this Court has authority to address.  The Court expresses no view on the strength of his petition for review of the order of removal or any other factor relevant to his stay application.

Nonetheless, as the circumstances currently stand, the Circuit has not stayed Petitioner's removal, and his detention remains governed by Section 1231(a).  Accordingly, the Court does not—at this time—have the statutory authority to address the merits of the petition regarding detention under Section 1226(a).  As such, the habeus petition, which raises due process concerns under Section 1226(c), must therefore be denied without prejudice.

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus is denied.  The Clerk of Court respectfully is requested close the case.

**SO ORDERED.**

**Date:  January 22, 2024**
      **New York, NY**

                                        **MARY KAY VYSKOCIL**
                                        **United States District Judge**